**ADVANCED MICRO DEVICES, INC., Petitioner–Appellant,**

**v.**

**INTEL CORPORATION, Respondent–Appellee.**

**No. 02–15070.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 2002.

Filed June 6, 2002.

Patrick Lynch, O'Melveny & Myers, Los Angeles, CA, for petitioner-appellant.

Robert Cooper, Gibson, Dunn & Crutcher, Los Angeles, CA, for respondent-appellee.

Before HAWKINS and SILVERMAN, Circuit Judges, and RESTANI,* Judge.

## OPINION

MICHAEL DALY HAWKINS, Circuit Judge.

In a question of first impression with respect to the European Community, we must determine the scope and reach of 28 U.S.C. § 1782,[1] which permits domestic discovery for use in foreign proceedings. We face two questions: (1) whether the proceeding for which discovery is sought qualifies as "foreign or international tribunal"; and (2) if so, whether Section 1782 requires a showing that the information sought would be discoverable or admissible in that proceeding. Because we conclude that the proceeding for which the discovery at issue is sought meets the statutory definition, we reverse the district court. As the district court will now need to deal with the merits of the discovery request, we determine that Section 1782 does not impose a threshold requirement that the material also be discoverable in the foreign court.

## Background Facts & Procedural History

Advanced Micro Devices, Inc. ("AMD") and Intel Corporation ("Intel") are worldwide competitors in the microprocessor industry. Believing that Intel was abusing its dominant market position in the European Common Market, AMD filed a complaint with the Directorate General–Competition ("Directorate") of the European Commission ("EC"). AMD's complaint, now in the preliminary investigative stage, alleges

---

\* Honorable Jane A. Restani, United States Court of International Trade, sitting by designation.

1. The statute provides:

   § 1782 Assistance to foreign and international tribunals and to litigants before such tribunals

   (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

   28 U.S.C. § 1782.

that Intel's actions violate Article 82 of the Treaty establishing the EC ("the EC Treaty"). To support its complaint, AMD sought discovery under Section 1782, asking that Intel produce documents and transcripts of testimony from a proceeding in another district court, *Intergraph Corp. v. Intel Corp.*, No. CV 97–N–3023 (N.D.Ala.). Intel objected, contending that the matter before the Directorate was not a "proceeding in a foreign or international tribunal" within the meaning of Section 1782. The district court agreed with Intel and this timely appeal, which we advanced for argument, followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## ANALYSIS

### Standard of Review

■ Questions of statutory interpretation are subject to de novo review while the district court's application of Section 1782 to the facts is reviewed for an abuse of discretion. *United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed.*, 235 F.3d 1200, 1203, 1206 (9th Cir.2000).

### Nature of Proceeding for which Discovery is Sought

AMD's complaint was filed under Article 82 of the EC Treaty and Article 3(2)(b) of EC Council Regulation. Article 82 generally prohibits "abuse by one or more undertakings of a dominant position within the common market." The Directorate is a sub-unit of the EC, authorized to enforce Article 82 by conducting investigations of alleged infringement, to propose curative measures in published decisions, and to impose fines and penalties. EC Treaty Art. 85.

Upon receipt of a complaint, the Directorate first conducts a preliminary investigation. It may gather information on its own and provide the complainant with an opportunity to support its allegations. This initial investigation is not considered an adversarial proceeding. *AKZO Chemie BV v. Commission*, 1 C.M.L.R. 231, 248 (E.C.J.1986). The Directorate also has the authority to seek information directly from the alleged infringer and may punish a failure to provide information with fines and penalties. Council Regulation 17/64, arts. 11, 14. Within the EC, the Directorate also has the authority to enter and search an alleged infringer's business. Council Regulation 17/64, arts. 15(1)(b), 16(1)(c).

Completion of the Directorate's preliminary investigation results in a decision whether to pursue the complaint. If the decision is not to proceed, the complainant is advised and given an opportunity to submit further information in support of the allegations. *Koelman v. E.C. Comm'n,* [1996] 4 C.M.L.R. 636, 649 (Ct. of First Instance 1996). The EC then decides whether to formally proceed in a final written decision. A decision not to proceed is subject to review by the Court of First Instance and ultimately by the Court of Justice for the European Communities ("Court of Justice"), the court of last resort for EC matters. *Stork Amsterdam BV v. E.C. Comm'n,* [2000]5 C.M.L.R. 31, 42(Ct. of First Instance 2000).

A decision to proceed with the complaint operates on a slightly different track. If the EC makes a preliminary determination that infringement may have occurred, it serves a statement of objections on the alleged infringer and appoints an independent hearing officer to conduct a hearing. Commission Decision of 23 May 2001, 2001/462/EC; Council Regulation 17/64, art. 19; Commission Regulation 2842/98, arts. 10–14. The hearing officer then presents conclusions to the Directorate who, in turn, makes a recommendation to the EC on how to proceed. A decision by the EC to dismiss, like a Directorate deci-

sion not to proceed after a preliminary investigation, is subject to review by the Court of First Instance. Commission Decision of 23 May 2001, arts. 13–16. If the EC decides to proceed with the complaint, a preliminary decision is drafted and forwarded to the EC Advisory Committee, which consists of representatives of the EC member states. The Advisory Committee drafts an opinion for the EC which, if adopted, becomes a final enforceable decision within the European Community. *Id.; Hasselblad v. Orbison*, [1985] Q.B. 475, 496 (1984).

We begin by noting that the language used by Congress in Section 1782 is broad and inclusive, including by way of example even criminal investigations prior to formal accusation. Nor does the text of Section 1782 suggest a distinction between civil and criminal proceedings. Our prior decisions also read the legislative history surrounding the adoption of Section 1782 broadly to include "bodies of a quasi-judicial or administrative nature" as well as preliminary investigations leading to judicial proceedings. *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1218–19 (9th Cir.1976); *see also United States v. Sealed 1*, 235 F.3d at 1204. We also noted that the 1964 amendments to Section 1782 eliminated the requirement that the foreign proceeding be "pending" and broadened the discretion of district courts to act on foreign assistance requests. *Id.; see*

*also* S.Rep. No. 1580, § 9 (1963), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788.[2]

■ Intel argues that the process for which AMD seeks discovery is purely administrative in nature, and, at least with respect to a recommendation to proceed to a complaint, preliminary to a non-judicial proceeding. In the past, we have rejected applications for discovery where the "proceeding" was a commission of inquiry authorized to investigate, report and make recommendations to a non-judicial body. *In re Letters of Request to Examine Witnesses from Court of Queen's Bench for Manitoba, Canada*, 488 F.2d 511, 512(9th Cir.1973). But the Directorate makes its recommendations to the EC—a body authorized to enforce the EC Treaty with written, binding decisions, enforceable through fines and penalties. EC decisions are appealable to the Court of First Instance and then to the Court of Justice. Thus, the proceeding for which discovery is sought is, at minimum, one leading to quasi-judicial proceedings.

■ Nor need the proceedings be imminent, as Congress made clear through the elimination of the requirement that the proceeding be "pending." *United States v. Sealed 1*, 235 F.3d at 1205. Here the Directorate's investigation will lead to a decision whether to proceed. A decision not to go forward would be appealable to the Court of First Instance, thus "leading to a judicial proceeding." A decision to proceed with a complaint would lead to

---

**2.** The Senate stated:

The word "tribunal" is used to make it clear that assistance is not confined to proceedings before conventional courts. For example, it is intended that the court have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries.... In view of the constant growth of administrative and quasi-judicial proceedings all over the world, the necessity for obtaining evidence in the United States may be as impelling before a foreign administrative tribunal or quasi-judicial agency as in

proceedings before a conventional foreign court. Subsection (a) therefore provides the possibility of U.S. judicial assistance in connection with all such proceedings. Finally, the assistance made available by subsection (a) is also extended to international tribunals and litigants before such tribunals. The assistance thus made available replaces, and eliminates the undesirable limitations of, the assistance extended by sections 270 through 270g of title 22, United States Code, which are proposed to be repealed.

hearings that are at least quasi-judicial in nature and then to an enforceable, judicially-reviewable decision.

Harkening to our own separation of powers traditions, Intel argues that the EC is not a tribunal because the distinction between prosecutor and decision-maker is blurred, if not non-existent. This might be of concern if the EC had a discernable institutional bias toward a particular outcome of the initial investigative process. *In re Letters Rogatory Issued by the Dir. of Inspection of India*, 385 F.2d 1017, 1020(2d Cir.1967) (Income Tax Officer with sole responsibility to make and then evaluate government's argument not a "tribunal" under § 1782). The EC process, however, takes care to permit both complainant and alleged infringer an opportunity for input to the eventual recommendation and inserts an independent entity—the EC Advisory Committee—between the Directorate's recommendation that a formal complaint be issued and the EC's decision to file a final enforceable decision.

In sum, we agree that the EC is an administrative body and that the investigation being conducted by its Directorate is related to a quasi-judicial or judicial proceeding. AMD has the right to petition the EC to stop what it believes is conduct that violates the EC Treaty, to present evidence it believes supports its allegations, to have the EC evaluate what it presents and to have the resulting action (or inaction) reviewed by the European courts. Although preliminary, the process qualifies as a "proceeding before a tribunal" within the meaning of 28 U.S.C. § 1782.

### Discoverability

Our determination that Section 1782 includes the proceedings for which AMD seeks discovery will require the district court to resolve the merits of AMD's discovery request. Bolstered by holdings from the First and Eleventh Circuits, Intel argues for the imposition of a threshold showing that AMD could obtain the discovery it now seeks in the EC proceedings. *In re Application of Asta Medica*, 981 F.2d 1, 5–7 (1st Cir.1992); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir.1988). The Second and Third Circuits refuse to impose such a requirement. *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101–02 (2d Cir.1992); *Euromepa, SA v. R. Esmerian, Inc.*, 154 F.3d 24, 28(2d Cir.1998); *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998). The remaining circuits to consider the issue distinguish between a request from a foreign tribunal and one from a private party, not imposing a threshold discoverability requirement on the former. *In re Letter of Request from Amtsgericht Ingolstadt, Fed. Republic of Germany*, 82 F.3d 590, 592–93 (4th Cir.1996); *In re Letter Rogatory From First Court of First Instance in Civil Matters, Caracas, Venezuela*, 42 F.3d 308, 310–11 (5th Cir.1995).[3]

We have previously rejected a requirement regarding admissibility in the foreign tribunal. *In re Request for Judicial Assistance from Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir.1977).

---

**3.** The topic has drawn considerable commentary in the academy, with most commentators preferring the *Euromepa* approach. Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L.Rev. 215, 234–37 (1994); Peter Metis, *International Judicial Assistance: Does 28 U.S.C. § 1782 Contain an Explicit Discoverability Requirement?*, 18 Fordham Int'l L.J. 332, 360–67 (1994); Steven Saraisky, *How to Construe Section 1782: A Textual Prescription to Restore the Judge's Discretion*, 61 U. Chi. L.Rev. 1127, 1148–50 (1994); Walker Sanzone, *Extra–Statutory Discovery Requirements: Violating the Twin Purposes of 28 U.S.C. Section 1782*, 29 Vand. J. Transnat'l L. 117, 147–50 (1996).

For good and sound policy reasons, we now reject such a requirement with respect to discoverability, be the request from a private party or foreign tribunal. We find nothing in the plain language or legislative history of Section 1782, including its 1964 and 1996 amendments, to require a threshold showing on the party seeking discovery that what is sought be discoverable in the foreign proceeding. *Bayer*, 146 F.3d at 193; *Euromepa*, 154 F.3d at 28; *In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir.1993). Had Congress wished to impose such a requirement on parties, it could have easily done so. Judge McKeown's analysis with respect to any requirement that the foreign proceedings be "imminent" is persuasive in this regard. *See United States v. Sealed 1*, 235 F.3d at 1205.

Finally, allowance of liberal discovery seems entirely consistent with the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts. *Malev*, 964 F.2d at 100.

### Conclusion

The district court's determination that the proceeding for which AMD seeks discovery does not qualify under 28 U.S.C. § 1782 is reversed.[4] Because we also determine that there is no requirement that AMD show that what is sought would be discoverable in the proceedings before the European Commission, the district court may proceed to consider AMD's request on the merits.

REVERSED and REMANDED.

---

4. Obviously, district court opinions to the contrary are expressly overruled. *See, e.g., Application for Assistance in a Foreign Proceeding*, 147 F.R.D. 223 (C.D.Calif.1993).